IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Russell E. Blankenship,           )
    Plaintiff,                )        Case No. 9:09-cv-1332-RMG-BM
                              )
    v.                        )        **ORDER**
                              )
Michael J. Astrue, Commissioner of Social )
Security Administration           )
    Defendant.                )

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Plaintiff appealed pursuant to 42 U.S.C. §§ 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq., D. S.C. For the reasons set forth below, the court adopts the Report, which was filed on July 27, 2010, and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social

Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir.1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir.1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir.1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

## DISCUSSION

The Magistrate Judge recommends that the court affirm the Commissioner's decision. (Dkt. No. 17). On August 3, 2010, Plaintiff filed an objection to this recommendation arguing that the Commissioner's conclusions do not accurately reflect or evaluate the medical evidence and treating

physicians opinions. (Dkt. No. 19). On August 6, 2010, the Commissioner filed a response to Plaintiff's objection and wrongly argues that this Court cannot conduct a *de novo* review. (Dkt. No. 20). As noted above, while this court must uphold a decision by the Commissioner that is supported by substantial evidence, this court reviews *de novo* any portion of the Report to which either party specifically objects.

In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. At the administrative level, after a thorough review of the evidence and testimony in the case, the ALJ concluded that, despite the fact that Plaintiff suffers from the severe impairments of Hepatitis C, a mood disorder, and musculoskeletal impairments of the back, neck, right shoulder, and right hip, making him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a limited range of sedentary work activity prior to November 4, 2003, and was therefore not disabled prior to that date. The ALJ did find that Plaintiff was disabled as of November 4, 2003, continuing thereafter. (R.pp. 28-29, 34-37). Plaintiff argues that the ALJ failed to give the proper weight to the opinions of Plaintiff's treating physicians concerning the extent of his pain and limitations. This properly summarizes Plaintiff's objection(s) to the Magistrate's Report and Recommendation as well. (Dkt. No. 19). However, after careful *de novo* review and consideration of the evidence and arguments presented, this Court finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act prior to November

4, 2003. Accordingly, the denial of benefits is affirmed as detailed herein.

Plaintiff had previously sought disability benefits. Following a motor vehicle accident in 1996, Plaintiff was awarded disability benefits for the period October 9, 1996 through 1997. Despite continued complaints of various medical problems, Plaintiff was found not to be disabled on a subsequent claim. (R.pp. 54, 1013, 1019). In this matter, Plaintiff does not allege that he was disabled prior to June 1, 2002. Hence, the only issue is whether any conditions from which he suffered prior to that date worsened in the ten (10) month period from June 1, 2002 through March 31, 2003, or he acquired some new disabling impairment during that period, to entitle him to disability benefits under DIB.

The record contains the following substantial evidence to support the denial of benefits. Plaintiff visited the Family Practice Center on June 5, 2002. X-rays of Plaintiff's hip, lateral pelvis, and femur showed the rods with the screws in place in his leg (from his previous auto accident) and his treating doctor that day, Dr. Tan Platt, did not see any new injury. (R.p. 492). Plaintiff was then seen by Dr. Richard James, who discovered mild tenderness to palpation at the gluteus medius with internal rotation of the right hip being more severely limited than external rotation, but still with good motion. Dr. James encouraged Plaintiff to perform cardio workouts on a stationary bicycle, and told him to pursue "normal activities" with no strenuous exercises. (R.pp. 491-492).

Plaintiff was seen again on June 25, 2002 by Dr. Jeffrey Ilsley, who after consultation with Dr. Bethea noted that Plaintiff was a possible "narcotic seeker" and that Dr. Bethea did not wish for him to have any narcotics. Dr. James saw Plaintiff again on June 27, 2002, noting Plaintiff's complaints of chronic back pain since 1996, as well as his history of drug abuse and Hepatitis C. Plaintiff was complaining of pain of 7 on a 10 point scale, although there were also days "where he

was pain free". Dr. James noted that Plaintiff's hip muscles would periodically flare up due to his condition, but found either no to minimal pain on palpation in Plaintiff's gluteal area or sciatic notch, and he was advised to continue with physical therapy and to try to use a stationary bike and treadmill. (R.p. 489).

Dr. Bethea saw Plaintiff on July 10, 2002. She noted that Plaintiff was not currently undergoing any physical therapy, and that he was again asking for pain medications. Dr. Bethea also noted that Plaintiff claimed that he was unable to work. The Record also indicates that she noted that Plaintiff's "mother accompanied him as is the usual case and wants me to write a letter to disability stating that he is totally disabled, which I have not been willing to do for them in the past." Dr. Bethea noted that Plaintiff was able to walk into the Clinic. On examination Dr. Bethea determined that Plaintiff was able to ambulate. She declined to note him as being disabled.

Plaintiff visited Dr. James again on July 18, 2002, and was encouraged to continue with pain management strategies. Dr. James told Plaintiff that his chronic back pain would continue and probably would be a lifelong problem, and that learning how to manage his pain at a tolerable level would be his major goal. (R.p. 487). The record reflects that Plaintiff had also been to see Dr. Daniel Westerkam on July 9, 2002 for a followup regarding traumatic brain injury (apparently as a result of his 1996 automobile accident) and chronic pain. Dr. Westerkam noted that he had seen Plaintiff "multiple times." Dr. Westerkam noted that Plaintiff still had the same complaints and was taking multiple medications but did not want to go to therapy. On physical examination Plaintiff was found to be in no acute distress, his extremities revealed no significant edema or erythema, increased tone was noted on the right side, with decreased range of motion of the right hip. (R.p. 247). Dr. Westerkam them completed two physicians statements of disability (apparently both dated July 10,

2002), in which he noted that Plaintiff had been injured in 1996 and that he had been "continuously total disabled" since October 26, 1996. (R.pp. 243, 245).

Plaintiff returned to see Dr. James on July 30, 2002. Dr. James noted that he had seen the Plaintiff "multiple times for his pain" and they had given him some trigger point injections and talked about pain management strategies. Dr. James reported that Plaintiff wanted him to "fill out a form that states that he is completely disabled in order for him to get food stamps[,]" noting that he had previously had these forms "filled out by Dr. Westerkam and others". Plaintiff was seen again by Dr. James on September 12, 2002, still complaining of chronic back pain and muscular skeletal pain. Dr. James noted that despite Plaintiff's complaints of constant and chronic back, neck and hip pain, he had no excessive pain reactions to his examination. Dr. James also noted that Plaintiff's strength in the affected extremities was 5/5 (full), and that given Plaintiff's physical examination and x-ray findings, his "estimated impairment would be minimal". Dr. James stated that Plaintiff had "chronic depression" which was stable, had a "second to third grade reading level", and opined that it was unknown when Plaintiff would be able to return to work since "he currently [was] not very motivated to return to work and [complains of] pain on sitting, standing, or doing anything that involved work related positions."

On October 11, 2002, Dr. James noted that Plaintiff was going to chronic pain management once a week, and that he had good motor function in his upper extremities with good grip strength. Dr. James reported that Plaintiff had "no other aspirations for hobby or job", that he believed that psychotherapy would help Plaintiff with his coping strategies, and that he would try to arrange a visit with therapist. (R.pp. 482-483). Plaintiff returned to the clinic on October 15, 2002 after he fell again. Plaintiff complained of worsening lumbar pain, although no contusion was noted "at this

point." Plaintiff was experiencing some muscle spasms in his paraspinous and very low lumbar areas, and was advised by Dr. James that this was "a short-termed effect, but that for long term he has got to [continue] doing some exercise." (R.pp. 481-482). Plaintiff continued to be seen at the Clinic, and on November 1, 2002 it was noted that about two weeks previous he had fallen over a dog, landing on his buttocks. On November 13, 2002, Plaintiff was still using crutches, although Dr. Bethea noted that Plaintiff had not been to physical therapy. Plaintiff was going to the Chronic Pain Clinic twice a week and was also seeing a psychologist. On examination, Dr. Bethea found Plaintiff to be a "healthy middle-aged [white male] in [no distress]". Plaintiff was unable to walk very far without crutches and appeared to be in a lot of pain, exhibiting diffuse tenderness in the lateral portion of his back musculature.

Plaintiff was seen by Dr. Kathleen Flocke on January 31, 2003 with continuing complaints of pain as well as night sweats. (R.pp. 316-317). Dr. Bethea saw Plaintiff for a followup of these complaints on February 10, 2003, at which time he was walking with a cane and exhibited some mild tenderness in the midepigastric area, but with no real right upper quadrant tenderness. (R.p. 315). A C.T. scan of Plaintiff's abdomen revealed some fatty changes in his liver with mild splenomegaly. (R.p. 328). On March 3, 2003, Plaintiff received some trigger point injections, and it was noted that he smelled of alcohol. It was also noted that Plaintiff had an elevated blood pressure that "may be related to withdrawal symptoms". (R.p. 312). As previously referenced, Plaintiff's eligibility for DIB expired on March 31, 2003.

Plaintiff began seeing a family practitioner, Dr. Tasha Boone, in September 2005. On July 5, 2006 Dr. Boone completed a multiple impairment questionnaire wherein she noted that Plaintiff had extensive back, leg and shoulder pain as a result of motor vehicle accident in October 1996

resulting in decreased mobility on the right side and decreased range of motion of all extremities. Dr. Boone opined that Plaintiff was in daily and chronic pain, and that he was disabled and unable to work. (R.pp. 643-650). Significantly, Dr. Boone further found that the symptoms and limitations stated in her assessment had been in effect since October 1996. (R.p. 649). Dr. Boone repeated this opinion of disability in questionnaires completed October 5, 2006 and August 24, 2007. (R.pp. 864-865, 935-940). On February 1, 2005, psychiatrist Dr. Aziz Mohuiddin, who had begun treating Plaintiff in October 2003, opined that Plaintiff had a mood disorder which caused work preclusive mental limitations, and that his limitations had existed since his motor vehicle accident in 1996. (R.pp. 371-378).

After review and consideration of this medical evidence as well as Plaintiff's subjective testimony, the ALJ determined that during the period Plaintiff was eligible for DIB (through March 31, 2003) he had the residual functional capacity for sedentary work where he was only occasionally required to balance, stoop, and crouch; never climb, kneel or crawl; perform no overhead reaching with the right "dominant" arm; and avoid exposure to hazardous work settings. Due to his pain and mood disorder, Plaintiff was further restricted to simple, routine work instructions, in settings not involving large crowds in the workplace or waiting on members of the public as customers, with his work instructions to be given to him orally. (R.p. 29). Substantial evidence in the medical records support these findings through at least March 31, 2003, and the undersigned can find no reversible error in the decision of the ALJ that Plaintiff was not eligible for DIB because he failed to establish a disability before March 31, 2003.

On November 3, 2003 (the day before the established onset date of disability which neither party is challenging the November 4, 2003 disability date), Plaintiff slipped and fell at a grocery store

and aggravated his back pain. The same day, Dr. Bethea noted for the first time that Plaintiff possibly had liver cirrhosis. In January 2004, Plaintiff presented to orthopedist William H. Kirkley, M.D., and complained that his back had been hurting "a lot more since" he fell in November 2003. Plaintiff also reported pain and tingling in both legs and intermittent tingling in his arms. On examination, he had "a funny feeling" with sensory testing in his legs. An MRI revealed two herniated lumbar discs. Dr. Kirkley noted that Plaintiff's "chronic problems" were "made worse by this recent injury".

The ALJ found that, beginning on November 4, 2003 (and continuing through the date of the decision), Plaintiff could only sit for two hours and stand for two hours per eight-hour workday, and could not perform his past work or any other work. Thus, the ALJ found that Plaintiff was disabled as of that date for purposes of receiving social security income, but was not entitled to disability insurance benefits because his disability did not commence prior to the expiration of his insured status on March 31, 2003.

Accordingly, the Record supports a finding of a disability beginning November 4, 2003 as result of Plaintiff's fall in the grocery store as summarized in the preceding paragraphs but the Record does not support a finding of disability prior to that date and affirmance of the decision below is warranted.

Plaintiff contends in his objections that Dr. James' findings support his claim of an early disability date. But Dr. James' September 2002 conclusion concerning Plaintiff's work capacity was based on the Plaintiff's own poor motivation for any work, not on his medical findings. (R.pp. 31, 484-485). This Court finds that Dr. James' medical records otherwise provide substantial evidence for denying benefits for the relevant time period. The administrative body also noted that Plaintiff's

primary physician, Dr. Bethea, specifically declined Plaintiff's request for a letter of disability, stating that his condition did not warrant such a conclusion; (R.pp. 33, 488); further pointing out that Plaintiff's medical records consistently reflected minimal medical findings, including x-rays consistently reflecting minimal objective findings with only conservative treatment being recommended for the Plaintiff during the relevant time period. (R.pp. 30-33). Again, the cited medical records and opinions of Plaintiff's treating and consultative physicians provide ample substantial evidence to support the Magistrate's Recommendation to affirm. *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996) (Noting importance to be accorded treating physician's opinion); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (ALJ may properly give significant weight to an assessment of an examining physician).

The primary medical opinions Plaintiff appears to rely on to support his argument are those of Dr. Westerkam, Dr. Boone, and Dr. Mohuiddin. However, Dr. Westerkam's statements of July 10, 2002 that Plaintiff was totally disabled and unable to work is a conclusion exclusively reserved to the Commissioner. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"). Further, Dr. Westerkam opined that Plaintiff had been totally disabled since 1996, even though Plaintiff had already been found in earlier applications not to have been disabled through May 31, 2002 (although he had had a closed period of disability for the period immediately following his automobile accident through November 2, 1997), and does not even allege that he was disabled prior to June 1, 2002. (R.pp. 54, 243, 1013, 1019). The ALJ considered Dr. Westerkam's July 10, 2002 opinions and found them not to be supported by the clinical and diagnostic record or by the opinions

of Plaintiff's other treating physicians during the relevant time period, and found his opinions not to be persuasive in evaluating Plaintiff's degree of impairment. (R.pp. 33-34). Thus, this Court can find no error with the Magistrate's Recommendation to affirm as the Record contains ample evidence that Dr. Westerkam's findings are inconsistent with the weight of the evidence from other treating doctors.

Based on the substantial evidence contained in the Record, the opinions of Dr. Boone and Dr. Mohuiddin were properly discounted based on the fact that these examinations were retrospective opinions and are clearly not supported by the medical evidence from the relevant time period. These doctors offered opinions regarding disability going back to periods of time where Plaintiff had already been determined not to be disabled. Further, they failed to provide any adequate or proper basis for crediting their findings considering that neither one of these physicians had seen or treated Plaintiff prior to March 2003.

## CONCLUSION

For the reasons set forth above, this court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court

September 22, 2010
Charleston, South Carolina